IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No. 21-CV-02573 (JRT/HB)

Mitchell Le Dac Ho

       Petitioner,

v.

Cathy Halvorson, Warden,
Minnesota Corrections Facility,
Faribault,

       Respondent.

**REPLY TO STATE'S MEMORANDUM**

On January 12, 2022 the Respondent filed State's Memorandum in Opposition to Mr. Ho's Petition for a Writ of Habeas Corpus. In reply, Petitioner submits the following:

In deciding whether counsel's performance was ineffective a court must consider the totality of the circumstances. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

In the present case counsel affirmatively misadvised the Petitioner about the availability of a consent defense causing him to plead guilty. A month after Petitioner's guilty plea counsel learned she was in error about the consent defense not being available and she agreed to help defendant withdraw his plea. Respondent argues this "sanitized" any concern of an "unintelligent plea". State's Memo at 12. To the contrary counsel further infected Petitioner's invalid guilty

plea by telling him she would help him withdraw his plea but she was concerned that if he withdrew his pleas and went to trial he would most likely be convicted and possibly sentenced to life.

In her conversations with Mr. Ho and in her emails, counsel presented the possibility of a life sentence is nothing short of a guaranteed outcome. Indeed, she did not explain to Mr. Ho how a life sentence was possible under the circumstances of his case. Rather, she chose specific words and phrases that indicated a life sentence *would* be the outcome. Ex. 12 at 25 ("the ***dangerous zone*** comes upon a conviction for a third case, where in the court could sentence to a life in prison"); Ex. 12 at 26 ("Whether you would like to ***risk very lengthy to lifetime imprisonment . . .***"); Ex. 12 at 27 ("I cannot in good conscious advise Mitchell to ***risk life in prison***"); Ex. 12 at 33 ("This is a result that will save his life"). Moreover, the discussion of a life sentence took center stage only after Mr. Ho informed counsel she misadvised him regarding the consent defense. Prior to that point, counsel did not discuss and had no reason to discuss a life sentence. However, to cover her misadvice she turned up the heat by referring to a life sentence in an attempt to convince Mr. Ho to maintain his guilty pleas without exposing her misadvice.

During these conversations she never told Petitioner that in order to receive a life sentence the State would have to indict him. Nor did she advise him

regarding the necessity of prior convictions in order to face a potential life sentence, which Petitioner didn't have. They did not discuss joining the cases for trial, even though counsel opined the other cases would be admitted as Rule 404(b) evidence. If the cases were joined for trial it would make a life sentence impossible.

In order to sanitize the plea, counsel needed to inform the district court that Petitioner had been misinformed about available defenses and therefore his guilty plea was not knowingly and intelligently made. The Petitioner needed to return to court to review and waive the rights he had attendant to trial, acknowledge the maximum penalties (in this case a 15 year maximum as charged in the complaints) and tender a factual basis. For it is the district court that must sanitize the plea by making a record finding that the plea was knowingly, intelligently and voluntarily made, and accept the plea. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969) ("Moreover, because a guilty plea is an admission of all elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."). The requirement that defendants know and understand the offenses they are pleading guilty to leaves no room for speculation. "Unless a defendant 'fully comprehends the elements of the crime to which [they are] confessing [their] plea cannot be said to be knowingly and voluntarily entered.

Minnesota Rule of Criminal Procedure 15.01, subd. 1 provides that "[b]efore the judge accepts a guilty plea, the defendant must be sworn and questioned by the judge with the assistance of counsel . . ." included within the sworn questioning the court reviews the maximum penalty the judge could impose for the crime charged (taking into consideration any prior convictions). In the leading Minnesota case, *State v. Johnson*, 279 Minn. 209, 156 N.W.2d 218 (1968) the court said that the "ultimate judicial responsibility" is to make certain "a person innocent of any crime has not been improperly induced to plead guilty to a crime."

The importance of Petitioner returning to the district court to reaffirm his guilty pleas can be gleaned from Justice Kennedy's statements In *Missouri v. Frye*:

> [B]efore a guilty plea is entered the defendant's understanding of the plea and its consequences can be established on the record. This affords the state the substantial protection against later claims that the plea was the result of inadequate advice. At the plea entry proceedings the trial court and all counsel have the opportunity to establish on the record that the defendant understands the process that led to any offer, the advantages and disadvantages of accepting it, and the sentencing consequences or possibilities that will ensue once a conviction is entered based upon the plea.
>
> [T]here may be instances when claims of ineffective assistance can arise after the conviction is entered. Still, the State, and the trial court itself, have a substantial opportunity to a guard against this contingency by establishing at the plea entry proceeding the defendant has been given proper advice or, if the advice received appears to have been inadequate, to remedy that deficiency before the plea is accepted and the conviction entered.

566 U.S. 134, 142 (2012). Clearly Justice Kennedy's words intimate the proper procedure would be to return to court and make a record regarding the plea and find out if the defendant wishes to persist in his change of plea or withdraw his plea and proceed to trial.

Rather than returning to court to sanitize the plea counsel perpetuated an invalid plea by overstating the risks of a trial which exerted undue influence on Petitioner to maintain his guilty plea. See ABA, Criminal Justice Standards for the Defendant Function §4-5.1(f) (4th ed. 2017) (Defense counsel should not intentionally understate or overstate the risks, hazards or prospects of the case or exert undue influence in the client's decision regarding a plea). It is the court's responsibility, not counsel's, to assure a plea is knowingly and intelligently entered. *McCarthy*, supra.

Respondent asserts Petitioner fails to point to federal case law requiring a different conclusion regarding counsel's performance being unreasonable. State's Memo at 13. I would direct the Court to Petitioner's Petition for Writ of Habeas Corpus at page 9 and the case of *Iaea v. Sunn*, 800 Fd.2d 861 (9th Cir. 1986). In *Iaea* the 9th Circuit found counsel's performance deficient because counsel made serious errors in informing *Iaea* he was subject to Hawaii's minimum sentencing law, but there was almost no chance of his receiving an extended or a life sentence, and that he had a chance to receive probation if he pled guilty. Id. at 864. The

Ninth Circuit found counsel's performance was deficient. Id. at 865. The court found that the gross mischaracterization of the likely outcome presented in *Iaea's* case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys. *Id*. Even applying the strong presumption of competence, the Ninth Circuit found that counsel's representation was deficient. *Id*. A lawyer must have an adequate understanding of both the facts and the law, as she serves as a crucial "guiding hand of counsel" for a criminal defendant. *Powell v. Alabama*, 287 U.S. 45, 69 (1932). Counsel admittedly did not possess an accurate understanding of the law, and she deliberately avoided having a full understanding of the facts.

Finally, Respondent argues Petitioner did not want to take the matter to trial and was not asserting his innocence. State's Memo at 13. To the contrary, Mr. Ho at his sentencing stated "I believe my actions were consensual at the time . . . ." (RA38) Even at Mr. Ho's sentencing he asserted his innocence. But, neither his lawyer, the prosecutor or court stopped the proceedings to inquire whether he was asserting his innocence.

The State points to the fact that Mr. Ho admitted under oath that he had sexual contact that was nonconsensual. State's Memo at 14. But in looking at the transcript, all Mr. Ho did was respond with one word to leading questions in a

situation where he was under the impression consent was not a defense to the one charge.

As argued in Appellant's petition Ms. Campoli framed the sentence Mr. Ho would receive if unsuccessful at trial essentially was a guaranteed life sentence. Whether she offered once, or multiple times, to move to withdraw Mr. Ho's guilty pleas does not change the fact that she brought up a life sentence only after he pleaded guilty. Further she continued referring to a life sentence using language that led Mr. Ho to believe he would receive a life sentence if convicted at trial. Mr. Ho believed he had everything to risk – a guaranteed life sentence – if he went to trial and lost. However, he testified, he would not have pleaded guilty if he were not subject to a life sentence. And, as the cases were charged, he was not subject to such a sentence.

The district court and appellate court rendered decisions contrary to the clearly established law as determined by the Supreme Court in *Strickland* and *Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985) (applying the *Strickland* test to plea bargaining) and given the totality of the circumstances the state court unreasonably applied the law as stated in *Strickland* and *Hill v. Lockhart* to the facts of Petitioner's case.

The advice provided Petitioner about the "remote possibility" of a life sentence with the facts of this case is tantamount to affirmative misadvice. There

7

were so many variables involved in Petitioner being exposed to a potential life sentence that is it fair to say it was a virtual impossibility in his case.

Petitioner respectfully requests a writ of habeas corpus issue.

Dated: February 23, 2022 	Respectfully submitted,

*/s/Charles L. Hawkins*
Charles L. Hawkins
Attorney Id. 124369
150 South Fifth Street, Suite 2860
Minneapolis, MN 55402
Tel: (612) 339-6921
clhcrimlaw@yahoo.com
*Attorney for Mitchell Le Dac Ho*