**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Mitchell Le Dac Ho,                      Case No. 21-cv-2573 (JRT/HB)

        Petitioner,

                                           **REPORT AND RECOMMENDATION**

v.

Cathy Halvorson, Warden, Minnesota
Corrections Facility, Faribault,[1]

        Respondent.

HILDY BOWBEER, United States Magistrate Judge

On November 30, 2021, Petitioner Mitchell Le Dac Ho filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his Minnesota conviction of criminal sexual conduct because of perceived violations of Ho's Sixth Amendment protection against ineffective assistance of counsel and his due process right to voluntary, intelligent, and accurate guilty pleas.  (Pet. at 1 [ECF No. 1].)  The petition has been referred to this Court pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for the issuance of a report and recommendation.  For the reasons set forth fully below, the Court recommends that the petition be denied.

**I.**      **Background**

Ho does not challenge the factual record developed by the Minnesota courts. Accordingly, the Court adopts the Minnesota Court of Appeals's summary of the

---

[1] The Court corrects the spelling of the city's name.

1

background facts of this case:

> Ho worked as a massage therapist at a massage franchise. In 2017 and 2018, the state filed three criminal complaints, each charging Ho with a single count of third-degree criminal sexual conduct under Minnesota Statutes section 609.344, subdivision 1(o) (2016). The complaints alleged that Ho had sexually assaulted three female clients while providing massages during his employment. Two complainants were adults and one was a juvenile.
>
> *Guilty pleas and sentencing*
>
> In June 2018, Ho entered into a plea agreement with the state, pleading guilty to third-degree criminal sexual conduct in two cases, including the case involving the juvenile complainant. The state dismissed the third case and agreed not to charge a fourth case involving a fourth complainant. Additionally, the state agreed to a sentencing cap of 82 months' imprisonment. Under the agreement, Ho would be free to pursue a downward departure at sentencing.
>
> At the plea hearing, the district court found that Ho's waiver of his trial rights was knowing, intelligent, and voluntary. To establish a factual basis for the pleas, Ho admitted that he sexually assaulted two paying clients while performing massages. He testified that, in January 2016, he digitally penetrated an adult client's vagina without her consent. Ho admitted that in September 2017, he digitally penetrated a juvenile client's vagina without her consent.
>
> After the plea hearing, Ho's attorney filed a motion for a downward departure from the sentencing guidelines, requesting either a dispositional or durational departure. At the sentencing hearing, Ho expressed remorse, stating that he had "believed [his] actions were consensual at the time," but he had "misread the situations." He accepted that his actions were criminal, and he apologized for the pain that he caused the victims and their families. The district court acknowledged that Ho had expressed remorse and accepted responsibility, and noted that the defense had submitted an "excellent" sentencing memorandum and many favorable letters on behalf of Ho. But the district court also stated that it had to consider the nature of the offenses, which were committed against multiple women in a vulnerable position over a span of many months. The district court ultimately sentenced Ho to concurrent prison sentences of 42 months and 62 months.
>
> *Postconviction proceedings*
>
> Several months later, in January 2019, Ho petitioned for postconviction relief. He alleged that his trial counsel had been ineffective and that his guilty pleas had not been knowing, voluntary, and intelligent. The postconviction court held an

evidentiary hearing. During the hearing, the postconviction court received several exhibits and heard testimony from Ho, his trial attorney, his mother, and a criminal-defense expert witness.

Ho's trial counsel testified that she had mistakenly informed Ho that consent was not a defense in the case involving the juvenile complainant. The information was incorrect; in each of the charged cases, the state had to prove nonconsensual sexual conduct in order to obtain a conviction. *See* Minn. Stat. § 609.344, subd. 1(o). Based on trial counsel's misinformation, however, Ho believed that consent was not a defense in the case involving the juvenile at the time of his guilty plea. According to the testimony at the postconviction hearing, Ho discovered after he pleaded guilty, but before sentencing, that consent was, in fact, a possible defense to the case involving the juvenile. Ho contacted his trial attorney, who immediately arranged to meet with Ho and his mother.

During a lengthy meeting on July 11, 2018,[2] Ho's attorney acknowledged the mistake and advised Ho about his options. First, she offered to assist Ho in withdrawing his guilty pleas based on her error. Second, she offered to withdraw as counsel from the case if Ho wished. Third, if Ho did not opt to withdraw the pleas, she offered to pursue a downward departure as originally planned. Ho's attorney also assessed the likely success of a consent defense at trial. She advised Ho that, in her opinion, the defense would be difficult because four unrelated complainants had alleged factually similar sexual assaults. She told Ho that testimony from all the complainants would likely be used as evidence in each trial, as the prosecutor had specifically advised her of the state's intention to admit this testimony as *Spreigl* evidence.

The trial attorney also advised Ho about his potential sentencing exposure without the plea bargain. She observed that to "beat" the state's plea offer, which capped sentencing at 82 months, Ho would have to obtain not-guilty verdicts for three of the four alleged incidents. The attorney also discussed mandatory life sentences for repeat sexual offenders under Minnesota Statutes section 609.3455 (2018), advising Ho that he could potentially face such a sentence if he was convicted in each of the cases. Although she believed it was a remote possibility, she believed she was ethically obligated to inform Ho of all potential sentences.

Ho's attorney testified at the postconviction hearing that the possibility of a life sentence was not the "crux" of the conversation at the July 11 meeting. She told Ho on multiple occasions that she believed his exposure, if convicted on the three charged counts, would be about ten years' imprisonment. The trial attorney based

---

[2] The Court notes that the lengthy meeting occurred on July 10, 2018. (App. 92.) This error is immaterial to Ho's arguments.

3

this assessment on the Minnesota Sentencing Guidelines grid, which she showed Ho.

After the July 11 meeting, Ho decided that he did not want to withdraw his guilty pleas. He instructed his attorney to focus on preparing the sentencing departure motion. His attorney noted in an email to Ho's mother following the meeting that Ho's instruction to focus on sentencing was "unequivocal[ ]."

At the postconviction hearing, Ho testified that he chose not to withdraw his pleas because he believed that he would face a mandatory life sentence if convicted on the three charges. He explained that his belief was based, in part, on his attorney's discussion of the sentencing statute during the July 11 meeting, where she circled the words "shall" and "for life" in the statutory language. According to Ho, his attorney never told him that, in Minnesota, the state must indict a defendant to seek a life sentence. Ho also testified that he never would have pleaded guilty in the first place had he known that consent was a defense in the case involving the juvenile complainant. Ho's mother offered corroborating testimony, stating that she believed her son pleaded guilty because he did not know consent was a defense and because he felt he had no other option.

Ho called a practicing criminal defense attorney to testify as an expert witness at the postconviction hearing. The attorney testified that, based on his review of the case, Ho's lawyer had been ineffective and her performance had prejudiced Ho. In a detailed order, the postconviction court denied Ho's request for postconviction relief. First, the postconviction court rejected Ho's ineffective-assistance-of-counsel claim, concluding that Ho had failed to establish that his trial attorney's performance was deficient and that he was prejudiced by the attorney's performance. And second, the postconviction court determined that Ho had failed to establish that a manifest injustice required the withdrawal of his pleas because his guilty pleas were accurate, voluntary, and intelligent.

*Ho v. State*, 2020 WL 7330312, at *1-3 (Minn. App. Dec. 14, 2020) (footnotes removed).

## II.     Decision by the Minnesota Court of Appeals

The Minnesota Court of Appeals concluded that the overall performance of Ho's attorney did not fall below an objective standard of reasonableness and that Ho failed to show prejudice. The parties agreed that Ho's attorney misinformed him about the availability of a consent defense in the juvenile case. *Id.* at *5. However, the Minnesota

District Court concluded that his attorney's corrective action remedied the deficiency. *Id.* Noting that counsel's actions aligned with an attorney's duty to inform the client of a material error, *see* ABA Standing Comm. on Ethics & Prof'l Responsibility, Formal Op. 481 at 1 (Apr. 17. 2018), the Minnesota Court of Appeals agreed that Ho's counsel's conduct as to the consent defense was not objectively unreasonable. *Ho*, 2020 WL 7330312, at *6.

Ho argued to the Minnesota courts that his counsel's corrective action also constituted ineffective assistance of counsel and that had counsel not overstated the likelihood of a life sentence, he would have withdrawn his pleas. *Id.* The Minnesota District Court concluded that there was a remote possibility of a life sentence. Minnesota Statutes § 609.3455 subd. 4(3) provides for a mandatory life sentence for repeat offenders convicted of particular crimes, including third-degree sexual conduct offenses. To qualify:

> 1) the person must have two prior sex offense convictions;
> 2) the present offense and past convictions must involve at least three separate victims; and
> 3) one of the following must apply:
>     a) the fact finder determines that the present offense involved an aggravating factor that would provide grounds for an upward durational departure under the sentencing guidelines other than the aggravating factor applicable to repeat sexual conduct convictions;
>     b) the person received an upward durational departure from the sentencing guidelines for one of the prior sex offense convictions; or
>     c) the person was sentenced under [Minn. Stat. § 609.3455] or Minnesota Statutes 2004, section 609.108, for one of the prior sex offense convictions.

Accordingly, if Ho taken all three cases to trial, and had he been convicted in the first two, then the first criteria would have been satisfied. Because all of the cases involved

separate victims, the second criteria would have been satisfied. And the Minnesota District Court reasoned that the victims' vulnerability while disrobed on a massage table or the age of the juvenile could have justified an aggravated departure. *Ho*, 2020 WL 7330312 at \*6. But even if all of the following conditions were met, the state would also be required to charge him by indictment if seeking a life sentence under Minnesota law. *See* Minn. R. Crim. P. 17.01, subd. 1.

The Minnesota Court of Appeals concluded that Ho's attorney did not misinform him that a life sentence was possible under the repeat-offender statute because 1) "it was akin to providing information about a statutory maximum sentence, or the unlikely outer limits of what could happen," and 2) "significantly, the record shows that Ho's attorney did not repeatedly emphasize the possibility of a life sentence." *Ho*, 2020 WL 7330312 at \*7. Accordingly, Ho had not overcome the strong presumption that counsel's performance was reasonable in this case.

Even if Ho had demonstrated deficient performance by his trial counsel, the Minnesota courts concluded that any error was not prejudicial. First, evidence contemporaneous with the alleged error suggested that Ho would not have withdrawn his plea: when he learned of the consent defense, he weighed the strength of a consent-based defense based on his counsel's advice and unequivocally elected not to withdraw his guilty pleas. *Id.* Second, the Minnesota District Court looked at "three groups" of factors in analyzing whether Ho would have maintained the guilty pleas but for the advice regarding the life sentence. *Id.*

> [F]irst, Ho's decision to plead guilty before the emphasis on the exposure to a life sentence; second, Ho's feelings about his innocence and the strength of his case; and third, the risk of facing a lengthy sentence, even if not a life sentence.
>
> Concerning the first factor, the postconviction court determined that, because Ho's attorney did not discuss life sentences with him until *after* he entered the guilty pleas, the timing of the discussion suggested that the potential exposure to a life sentence was not a "but-for" cause of pleading guilty. In considering the second factor, the postconviction court examined the evidence of Ho's remorse for his actions. Ho expressed remorse to his attorney as they prepared for sentencing, during the presentence investigation, and during the sentencing hearing.
>
> Finally, as to the third factor, the postconviction court determined that Ho was motivated to plead guilty by his desire to avoid a lengthy prison sentence in general—not specifically to avoid a life sentence. Ho's attorney advised him that she believed it was unlikely that he would win at trial and that, if convicted on three counts, he faced a presumptive sentencing range of 100 to 140 months. *See* Minn. Sent. Guidelines 2.B.1.b, 4.B. A fourth case of fourth-degree criminal sexual conduct would have exposed Ho to a presumptive sentencing range of 102 to 120 months. *Id.* Ho could have faced even more time if the state proved an aggravating factor or if the court imposed permissive consecutive sentences. The postconviction court noted that Ho's strategy in directing his attorney to forgo a plea withdrawal motion and to focus on the argument for a sentencing departure reflects that he knew keeping the plea deal was his best opportunity to minimize his sentence or to avoid prison altogether.

*Id.* at *8. The Minnesota Court of Appeals agreed with the postconviction court's assessment of the totality of the circumstances. *Id.* Overall, the Minnesota Court of Appeals concluded that the record supported the fact that Ho pleaded guilty to avoid any lengthy sentence, not just a mandatory life sentence referenced by his counsel. *Id.* Because there was not a reasonable probability that but for his attorney's advice about a life sentence, he would not have pleaded guilty, Ho failed to satisfy the prejudice prong of the *Strickland* analysis.

Finally, the Minnesota District Court rejected Ho's request for an opportunity to withdraw his guilty pleas because they were not voluntary, accurate, or intelligent.

7

Minnesota Rule of Criminal Procedure 15.01, subdivision 1 allows a defendant to withdraw his plea "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." The Minnesota District Court held, and the Minnesota Court of Appeals agreed, Ho did not move diligently in challenging the validity of his guilty plea, particularly since trial counsel offered Ho exactly that prior to sentencing. *Id.* at *9. Moreover, the Minnesota Court of Appeals noted that Ho's admission under oath that the sexual contact with the juvenile complainant was nonconsensual undermines his claim that he lacked sufficient information about the consent defense. *Id.*

### III.   Discussion

Ho argues that his conviction violates the Sixth Amendment guarantee of effective assistance of counsel because 1) his trial counsel failed to adequately investigate the offense conduct; 2) his trial counsel misinformed Ho of the availability of a consent defense; and 3) his trial counsel intentionally overstated the risks Ho faced by going to trial. For the same reasons, Ho argues that his guilty plea was invalid because it was not made intelligently, and therefore his conviction is based on a violation of his Due Process rights. Respondent argues the petition should be denied on the merits. In a footnote, Respondent also argues that Ho "largely focused on state cases and application of state law to his claims" before the Minnesota courts and therefore he failed to present his federal claims to state courts and they have been procedurally defaulted. (Resp.'s Mem. Opp. Pet. at 8 n.3 [ECF No. 13].)

### A. Standard of Review

Under AEDPA, a federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, an application for a writ of habeas corpus filed in federal court by a state prisoner "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

If a petitioner demonstrates that he has exhausted available state remedies, or the federal habeas court addresses the merits under § 2254(b)(2), the court proceeds to review the petitioner's claims under AEDPA's highly deferential standard for evaluating state courts. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("state-court decisions [must] be given the benefit of the doubt."). The petitioner must show that the adjudication of the claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

9

light of the evidence presented to the state court proceeding. 28 U.S.C. § 2254(d); *see also Finch v. Payne*, 983 F.3d 973, 978-80 (8th Cir. 2020) (explaining § 2254).

A decision is contrary to clearly established federal law if the state court reached a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or arrived at an opposite conclusion to a Supreme Court case on materially indistinguishable facts. *Litschewski v. Dooley*, 792 F.3d 1012, 1015–16 (8th Cir. 2015). Under § 2254(d)(1), "[t]he court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v.* Cone, 535 U.S. 685, 694 (2001). A federal habeas court must deny a writ "even if [the Court] disagrees with the State court's decision—so long as that decision is reasonable in view of all the circumstances." *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001). In its review, the federal habeas court must presume the state court's factual determinations are correct unless the petitioner presents clear and convincing evidence to the contrary. *See Perry v. Kemna*, 356 F.3d 880, 883 (8th Cir.), *cert. denied*, 543 U.S. 1022 (2004); 28 U.S.C. § 2254(e)(1).

    **B.**    **Procedural Default**

Before seeking habeas corpus relief under § 2254, a prisoner ordinarily must "fairly present" his federal claims to the state courts. *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). "The onus rests on the prisoner to present the substance of his federal claims 'in each appropriate state court (including a state supreme court with powers of discretionary review.'" *Id.* (quoting *Baldwin v. Reese*, 541 U.S. 27, 29

(2004)). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (cleaned up). If a prisoner fails to present his federal claims to the state courts, those claims are generally considered procedurally defaulted. *Turnage*, 606 F.3d at 936.

Ho explicitly cited his Sixth Amendment guarantee against ineffective assistance of counsel in his memorandum supporting his postconviction petition. (App. 56.)[3] He explicitly cited the same in his brief to the Minnesota Court of Appeals. (App. 301.) Although less explicit in his petition to the Minnesota Supreme Court, the federal claim was fairly presented in his arguments and the Minnesota Court of Appeals's decision. (App. 417-18.)

However, Ho's arguments shifted between state and federal court. To this Court, Ho presents three arguments under the Sixth Amendment: 1) his trial counsel failed to adequately investigate the offense conduct; 2) his trial counsel misinformed Ho of the availability of a consent defense; and 3) his trial counsel intentionally overstated the risks Ho faced by going to trial. All three legal arguments were raised before and addressed by the Minnesota District Court. (*See* App. 260-75.) But Ho raised only the latter two on appeal and in his petition to the Minnesota Supreme Court. (*See* App. 304-12, 412-19.) Ho's failure to present the legal argument about his counsel's inadequate investigation to

---

[3] Respondent's Appendix (App.) contains the state court record.

11

Minnesota's appellate courts resulted in procedural default. *See O'Sullivan v. Boerckel*, 562 U.S. 838, 845 (1999) (holding that a claim must be fairly presented in one complete round of the state's established appellate review process).

Similarly, Ho's argument regarding his right to an intelligent, knowing, and voluntary plea under any federal law was not presented the Minnesota courts. In his memorandum supporting his postconviction petition, Ho relied exclusively on Minnesota cases concerning the right to withdraw his pleas. (App. 61-62 (pre-hearing briefing), 225-27 (post-hearing briefing).) *See State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010); *State v. Taylor*, 178 N.W.2d 892 (Minn. 1970); *State v. Boecker*, 880 N.W.2d 391, 392 (Minn. App. 2016); *State v. Lyle*, 409 N.W.2d 549, 554 (Minn. App. 1987). *Raleigh* and *Taylor* both mention federal cases once. *Raleigh*, 778 N.W.2d at 94 (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)); *Taylor*, 178 N.W.2d at 42 n.7 (citing *Boykin v. Alabama*, 395 U.S. 238 (1969) and *McCarthy v. United States*, 394 U.S. 459 (1969)). But neither can be said to be state cases "raising a pertinent federal constitutional claim before the state courts." *Carney*, 487 F.3d at 1096. Instead, the Minnesota District Court analyzed whether the plea was accurate, voluntary, and intelligent because, were it not, Ho may be entitled to withdraw his plea to prevent a manifest injustice under Minnesota Rule of Criminal Procedure 15.05, subdivision 1. (App. 282 (citing *Raleigh*)). The Minnesota District Court held that Ho's pleas were voluntary, intelligent, and accurate under Minnesota law. (App. 282-86.) It also declined to "set precedent promoting defendants to hold off on remedying potentially deficient pleas when they are made aware of the deficiencies in order to try their odds at sentencing first," referring to the

12

fact that trial counsel informed Ho of the error prior to sentencing. (App. 286.) The Minnesota Court of Appeals affirmed the district court on this latter ground; under Rule 15.05 subdivision 1, Ho was required to be diligent in challenging the validity of his guilty plea under Minnesota law. "[W]hat counts here is that the court's analysis was confined to matters of state law." *Turnage*, 606 F.3d at 939.

Ho presented arguments under federal law for the first time in his petition to this Court. (Pet. at 18, citing *Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242-43; and *Brady v. United States*, 397 U.S. 742, 749 (1970).) Ho never presented his arguments about his federal right to a knowing, intelligent, and voluntary plea to the Minnesota courts. That the two claims are similar is insufficient. *Carney*, 487 F.3d at 1097. "Simply comparing the arguments made in the petitioner's briefs to this court and the arguments made in the petitioner's brief[s] made to the [state courts] shows that the petitioner is attempting to raise a new claim in federal court that he failed to present in state court." *Turnage*, 606 F.3d at 937. Because the federal issue was not fairly presented to the Minnesota Courts, it has been procedurally defaulted. *Turnage*, 606 F.3d at 936. Ho acknowledged in his petition that he cannot and does not "make the claim . . . that only Minnesota constitutional law or statutes were violated." (Pet. at 6.) *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Ho did not reply to Respondent's argument regarding procedural default. The

13

Court is unaware of any cause and prejudice sufficient to excuse the procedural default. Accordingly, the petition should be denied as to Ho's procedurally defaulted arguments regarding 1) whether his trial counsel's failure to investigate the criminal conduct alleged constituted prejudicial ineffective assistance of counsel and 2) whether entry of the pleas that were not voluntary, intelligent, and accurate violated his due process rights. Resolution of procedural default issues leaves two arguments under *Strickland*.

### C. *Strickland* Claim

In order to prevail on an ineffective-assistance-of-counsel claim, Ho must satisfy the two-prong test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). First, he "must show that counsel's representation fell below an objective standard of reasonableness," the proper measure of which is "reasonableness under prevailing professional norms." *Id.* at 688. The Supreme Court "long [has] recognized that prevailing norms of practice as reflected in American Bar Association standards and the like are guidelines to determining what is reasonable." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (cleaned up). Second, he "must show that the deficient performance prejudiced the defense" and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The two-part test applies to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (citing *McMann v.*

14

*Richardson*, 397 U.S. 759, 771 (1970)).

> In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard attorney competence already set forth in *Tollett v. Henderson*[, 411 U.S. 258 (1973)], and *McMann v. Richardson*[.] The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 58-59. Where the defendant was prejudiced by the denial of proceeding to trial, the defendant need not show that the trial would have resulted in a more favorable outcome than the guilty plea proceeding. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). Rather, such a defendant must demonstrate that he would have proceeded with trial but for the errors. *Id.* at 1968. "Surmounting *Strickland*'s high bar is never an easy task, and the strong societal interests in finality has special force with respect to convictions based on guilty pleas." *Id.* at 1967. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

Ho properly preserved two arguments that his trial counsel was ineffective during the plea-bargaining process. First, he argues his trial counsel misinformed him of the availability of a consent defense to the charge of sexual misconduct involving a minor. Second, he asserts his trial counsel effectively compounded the error by intentionally overstating the risks he faced by going to trial once she realized that she had failed to advise him of the consent defense.

15

Ho argues that the Minnesota Court of Appeals's application of the *Strickland* test was objectively unreasonable. (Pet. at 6.)  He argues the "Minnesota Court of Appeals overlooked trial counsel's advice to Petitioner *after* she acknowledged to him that she was mistaken when she advised him that a consent defense was unavailable in one of the cases he pleaded guilty." (Pet. at 2.)  Second, the Minnesota Court of Appeals failed to examine trial counsel's advice about the life sentence in the context of the ABA's *Criminal Justice Standards for the Defense Function* § 4-5.1(f), which states that "[d]efense counsel should not intentionally understate or overstate the risks, hazards, or prospects of the case or exert undue influence on the client's decisions regarding the plea." (Pet. at 13.)

The factual basis for Ho's arguments comes from several emails from trial counsel to Ho and his mother. (*See* Pet. at 14-15; *see also* App. 68 (affidavit of Ho's mother referencing July 11 and July 12 emails); App. 162-65 (testimony of Ho's mother regarding conversations with trial counsel about the possibility of a life sentence); App 168-69 (testimony of Ho's mother regarding the emails); App 271 ("[Trial counsel] believed the possibility of a life sentence in the future was a very real danger both due to the cases he faced at the time and potential future charges, and she evidently stressed this concern to Petitioner during their meeting on July 10, 2018 over the course of two hours.).  Each email referenced a potential life sentence:

> The dangerous zone comes upon a conviction for a third case, wherein the Court could sentence to life in prison.
>
> Consent is a defense.  Whether you would like to risk very lengthy to lifetime imprisonment to say that each of the four unrelated alleged victims consented, that

16

>is Mitchell's call.
>
>I cannot in good conscience advise Mitchell to risk life in prison.
>
>[Pleading guilty] is a result that will save [Petitioner's] life.

(Pet. at 15.)  Trial counsel emphasized the possibility of a life sentence even though the prosecutor never mentioned or implied that Ho faced a life sentence.  (App. 106-07.). *Compare with Iaea v. Sunn*, 800 F.2d 861, 864-65 (9th Cir. 1986) (holding counsel's performance was deficient where counsel advised that defendant could escape minimum sentencing and that extended sentencing was "practically non-existent" where minimums did not apply to defendant and the prosecutor indicated that he would press for extended sentencing).  Ho argues that trial counsel did not follow the proper procedure, which would be to return to court and make a record regarding the plea to determine defendant's preference for proceeding to trial or maintaining the plea.  (Pet'r's Reply at 4-5 [ECF No. 20].)  As for prejudice, Ho relies on his own testimony that he would not have pleaded guilty if he had known consent was a defense to the case involving the juvenile and would have withdrawn his pleas absent trial counsel's repeated statements to him indicating he would receive a life sentence if he went to trial. (*See* App. 65-66, 181-84, 190.)

Even assuming that Ho's trial counsel's performance was twice deficient by initially failing to advise Ho about the consent defense and then compounding the error by overemphasizing the possibility of a life sentence when Ho was weighing whether to withdraw the plea, and assuming the Minnesota Court of Appeals was objectively unreasonable in concluding otherwise, this Court cannot say that the Minnesota Court of

17

Appeals's conclusion that Ho was not prejudiced by these errors was an objectively unreasonable application of *Strickland*. Before the postconviction court, Ho needed to demonstrate, by contemporaneous evidence, a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty [and would have sought to withdraw his guilty plea] and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Lee*, 137 S. Ct. at 1967. The Minnesota Court of Appeals articulated reasonable grounds, supported by the record, to conclude that the risk of a life sentence was not the motivating factor behind Ho's decision to proceed with sentencing and forego assertion of his consent defenses. *Ho*, 2020 WL 7330312, at *8. Even if tainted by trial counsel's error regarding the consent defense, the fact that Ho agreed to plead guilty *before* being advised about the possibility of a life sentence provides some support for the idea that he was not motivated by the life sentence. Contemporaneous evidence shows that Ho felt remorseful for his actions, which is consistent with his decision to go forward with sentencing rather than contest the charges. And finally, Ho was motivated to avoid a lengthier sentence, even if it was not a life sentence, through a sentencing strategy focused on acceptance of responsibility and reform. In other words, it would not appear the prospect of a life sentence was ever a "determinative issue" for Ho in plea discussions. *See Lee*, 137 S. Ct. at 1969. The Minnesota courts weighed this evidence against his testimony that he would not have pleaded in the first instance and would not have maintained his pleas afterward but for his counsel's errors. The decision of the Minnesota Court of Appeals is not based on an unreasonable determination of the facts, nor did it involve an unreasonable application of the *Strickland* standard. 28 U.S.C. §

2254(d); *see Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (per curiam) ("All that mattered was whether the [*state court*], notwithstanding its substantial latitude to reasonably determine that a defendant has not shown prejudice, still managed to blunder so badly that every fairminded jurist would disagree. It did not.") (cleaned up).

As a result, the petition for habeas corpus should be denied.

## IV. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the petition for a writ of habeas corpus of Petitioner Michell Le Dac Ho [ECF No. 1] be **DENIED**.

Dated: June 21, 2022              *s/ Hildy Bowbeer*
                                   Hildy Bowbeer
                                   United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).